**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **ELGIN-BUTLER COMPANY,** | § | **Case No. 14-11180-TMD** |
| *et al* | § | |
| **Debtors** | § | **Joint Administration Requested** |

**EMERGENCY MOTION FOR USE OF CASH COLLATERAL**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Elgin-Butler Company, McIntyre Tile Company, Inc. and Trikeenan Tileworks, Inc. of New York ("Debtors")[1] file this their Emergency Motion for Use of Cash Collateral:

**Case Background**

1.     Debtors filed for relief under Chapter 11 of the United States Bankruptcy Code on August 1, 2014.  The Debtors are each operating as a debtor-in-possession pursuant to 11 U.S.C. Sections 1107 and 1108.

2.     This Court has jurisdiction over this matter under 28 U.S.C. § 1334.  This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(M).

**Secured Debt At Issue**

3.     Elgin-Butler Company ("Elgin-Butler") is indebted to Frost Bank, formerly The Frost National Bank d/b/a Frost Capital Group ("Lender") pursuant to an Amended and Restated Revolving Credit Note dated April 25, 2012, in the original principal amount of $4,000,000.00, governed in part by a Loan Agreement dated September 14, 2007, as amended and modified thereafter.  Debtors have pledged accounts receivable, inventory and raw materials to secure

---

[1] Each of the Debtors have filed a separate case, and has moved for the cases to be jointly administered in this case.

repayment of the indebtedness (the "Collateral"). The current debt under the Note is approximately $3.2 million.

### Background of the Debtors

4.      Debtors are aware of no other person or entity, other than taxing authorities for current taxes, who claims a lien or security interest in the Collateral.

### Debtors' Business and  Background

5.      Elgin-Butler is a 145 year old brick and tile manufacturing Company founded in Austin, Texas in 1873.  It was moved to Elgin in approximately 1910 and was operated by the Butler family until 2005 when it was sold to Matthew Galvez (an 81% shareholder) and James Nichols (a 19% shareholder, collectively, the "Shareholders") in a transaction financed by Frost Bank ("Frost") with an Small Business Administration ("SBA") guarantee on a portion of the acquisition financing.  As of this date, the Debtors have 120 employees.

6.      The primary products manufactured and sold by Elgin-Butler are glazed brick and large structural brick for use in school construction, transportation terminals such as subway stations and airports, stadiums, food processing plants, jails, multi-unit housing, restaurants, and other commercial uses.  Elgin-Butler also makes fire brick, fireplace liners and glazed thin-brick at its plant in Elgin, Texas.  Because the Company manufactures architectural products for public and commercial projects, its materials must be manufactured and ready to ship by a contracted date.

7.      Elgin-Butler's subsidiaries, McIntyre Tile Company, Inc. ("McIntyre") and Trikeenan Tile Works, Inc. of New York ("Trikeenan", and together with Elgin-Butler and McIntyre, the "Company"), also manufacture art-tile at their respective plants in Healdsburg,

California and Hornell, New York. MacIntyre and Trikeenan's art-tile is primarily used in commercial applications.

8.     At the time of the Shareholders' acquisition in December 2005 (the "Acquisition"), Elgin-Butler was distressed in large part due to a defaulted loan made by Wells Fargo, the proceeds of which were to be used to automate clay extrusion operations and install a grinding and screening plant for clay mining purposes. The Shareholders then set about restructuring the company, with the result that EBITDA increased from a negative $1mm in 2005 to over $3mm in 2010, the plant utilization rate increased to 100%, and customers were subject to 50 week lead times for the plant's manufactured goods. The turnaround was accomplished by building a strong North American distributor network, launching a new website and web presence, adding a sales force both locally and nationally, and changing almost 80% of the product offerings to better fit potential projects.

9.     Starting in the latter half of 2011, the Company began experiencing declining demand for its products. Public funding for infrastructure projects decreased and many important projects that the Company had expected to move forward were postponed or cancelled. Overall, between 2010 and 2013, the Company experienced an approximately 70% decline in revenues. Coupled with a fire at the McIntyre facility in 2011, and the death of the long-time Vice President of Manufacturing of Elgin-Butler in 2013, the Debtors faced substantial hurdles.

10.     In response, the Debtors reduced their workforce, curtailed discretionary spending, expanded low-cost marketing efforts, expanded its geographic market areas, and hired new sales personnel. The Company has already experienced a $613k positive shift in EBITDA during 2014 compared to the first five months of 2013, as well as a 40% increase in Elgin Butler's revenues, and a 30% increase in the Company's combined revenues. This improvement

has been achieved with no capital expenditures or inventory line of credit, but with only the use of the Company's accounts receivables line of credit. The Company is fully engaged and executing on major contracts and both its recoveries and gross margins at all three plants are reaching new highs. At this time, Debtors have a booked work backlog exceeding $3.3 million

**Need for and Proposed Use of Cash Collateral**

11.     Debtors need the revenues generated from the Collateral in order to pay normal and necessary operating expenses in connection with their business in order to preserve and protect the Debtors' businesses and the Estates and avoid immediate and irreparable injury. Debtors will supply as proposed budget and cash flow projection by August 4, 2014. Without the use of cash collateral, Debtors will be unable to operate their business and manage its affairs.

12.     Debtors propose to use cash collateral in accordance with the proposed Budget up to a variance of 10% per line item. 11 U.S.C. § 363 prevents the Debtors from using "Cash Collateral" without the consent of the secured party. As of the date of the filing of this Motion, the Lender has not consented to the use of cash collateral. Counsel for Debtors has not had sufficient opportunity to review the validity or perfection of the liens claimed by the lien claimant on the Collateral or its revenues and does not concede the validity or perfection of such liens. However, to the extent such liens and claims are valid and perfected, Lender is adequately protected in connection with the Debtors' use of Cash Collateral and continued operations of the Debtors' businesses.

13.     To the extent necessary, and as adequate protection for Debtors' use of cash collateral, Debtors propose to grant a post-petition lien and all collateral which was pledged to the lienholder and was properly perfected, pre-petition. Other relevant terms of the proposed adequate protection are set forth in the proposed order which is served concurrently with is

Motion.  Debtors respectively request that this Court authorize the use of Cash Collateral under 11 U.S.C. § 363 for ordinary and necessary expenses incurred by the Debtors to operate, maintain, preserve and protect their business and the Estate.  The use of cash collateral, pursuant to the terms of the Budget is in the best interests of the Estate and its creditors.  Debtors have provided notice of this Motion to the Lender, the twenty largest unsecured creditors and to the United States Trustee in accordance with the Bankruptcy Rules and the Local Rules.

14.     Debtors seek interim authority to use cash collateral on an emergency basis and authority to use cash collateral upon final hearing of this Motion.

WHEREFORE, PREMISES CONSIDERED, Debtors respectfully request that this Court authorize the use of Cash Collateral as heretofore requested.  Debtors request such other and further relief as they may show themselves justly entitled.

Respectfully submitted,

HOHMANN, TAUBE & SUMMERS, L.L.P.

By: */s/ Mark C. Taylor*

Mark C. Taylor
State Bar No. 19713225
100 Congress Ave., Suite 1600
Austin, Texas 78701
Telephone:  (512) 472-5997
Telecopier:  (512) 472-5248

PROPOSED ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

## <u>CERTIFICATE OF SERVICE</u>

The foregoing was served on all persons on the attached list via first class mail on August 1, 2014.

/s/ Mark C. Taylor
Mark C. Taylor