# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ELGIN-BUTLER COMPANY, | § | CASE NO. 14-11180-TMD |
| TRIKEENAN TILEWORKS, INC. | § | |
| OF NEW YORK, | § | CASE NO. 14-11181-TMD |
| AND MCINTYRE TILE COMPANY, INC., | § | CASE NO. 14-11182-TMD |
| | § | |
| Jointly Administered Debtors | § | CHAPTER 11 |
| | § | Jointly Administered Under |
| | § | CASE NO. 14-11180-TMD |

## DEBTORS' PROPOSED JOINT CHAPTER 11 PLAN OF REORGANIZATION, AS MODIFIED

---

**THIS CHAPTER 11 PLAN IS BEING SUBMITTED FOR APPROVAL BY THE BANKRUPTCY COURT ALONG WITH A PROPOSED DISCLOSURE STATEMENT. THIS CHAPTER 11 PLAN HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. ACCORDINGLY, THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE CHAPTER 11 PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.**

---

Mark C. Taylor
Texas Bar No. 19713225
HOHMANN, TAUBE & SUMMERS, L.L.P
100 Congress Avenue, Suite 1800
Austin, Texas 78701
Telephone: (512) 472-5997
Facsimile: (512) 472-5248

ATTORNEYS FOR DEBTORS

**TABLE OF CONTENTS**

**ARTICLE I. INTRODUCTION**................................................................................1

**ARTICLE II. DEFINITIONS, RULES OF INTERPRETATION, AND CONSTRUCTION OF TERMS** ................................................................1

**ARTICLE III. DESIGNATION OF CLAIMS AND INTERESTS** .......................7
    3.1    Summary. ...............................................................................................7
    3.2    Identification of Classes. ......................................................................7
    3.3    Identification of Impaired and Unimpaired Classes. ...........................8
    3.4    Impaired Classes Entitled to Vote. ......................................................8
    3.5    Impaired Classes Not Entitled to Vote. ...............................................8
    3.6    Impaired Class of Equity Not Entitled to Vote. ..................................8
    3.7    Controversy Concerning Classification, Impairment or Voting Rights. ......................8
**ARTICLE IV. TREATMENT OF UNCLASSIFIED CLAIMS** ............................8
    4.1    Administrative Claims. .........................................................................8
    4.2    Allowed Priority Tax Claims. ..............................................................9
**ARTICLE V. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS** ........................................................................10
    5.1    Classified Claims .................................................................................10
**ARTICLE VI. MEANS FOR IMPLEMENTING PLAN** ......................................12

**ARTICLE VII. CONDITIONS PRECEDENT** ......................................................15
    7.1    Conditions Precedent to Confirmation. ...............................................15
    7.2    Conditions Precedent to Effective Date. ..............................................15
    7.3    Notice of the Effective Date. ...............................................................15
**ARTICLE VIII. PROVISIONS GOVERNING DISTRIBUTIONS** .....................15
    8.1    Distributions Generally. .......................................................................15
    8.2    Distributions on Disputed Claims. .......................................................15
    8.3    Delivery of Distributions. ....................................................................16
    8.4    Uncashed Checks. ................................................................................16
    8.5    Compliance with Tax Requirements. ...................................................16
**ARTICLE IX. PROVISIONS FOR THE RESOLUTION OF OBJECTIONS TO CLAIMS AND EQUITY INTERESTS** .............................................................16
    9.1    Objections to Claims or Equity Interests. ...........................................16
    9.2    Amendments to Claims; Claims filed After the Confirmation Date. ...........................17
**ARTICLE X. EXECUTORY CONTRACTS AND UNEXPIRED LEASES** .........17
    10.1    Rejection of Executory Contracts. .......................................................17
**ARTICLE XI. EFFECT OF REJECTION BY ONE OR MORE CLASSES** ........17
    11.1    Impaired Classes to Vote. ....................................................................17
    11.2    Acceptance by Class. ...........................................................................17
    11.3    Reservation of Cramdown Rights. .......................................................18
**ARTICLE XII. EFFECT OF CONFIRMATION** .................................................18
    12.1    Generally. .............................................................................................18

12.2     Property...........................................................................................................18

**ARTICLE XIII. RETENTION OF JURISDICTION** ...........................................................**18**

13.1     Exclusive Bankruptcy Court Jurisdiction. ..................................................18

13.2     Limitation on Jurisdiction. ............................................................................19

**ARTICLE XIV. MISCELLANEOUS PROVISIONS** .........................................................**19**

14.1     Effectuating Documents and Further Transactions...................................19

14.2     Severability. ....................................................................................................19

14.3     Final Allowance. .............................................................................................20

14.4     Consummation. ...............................................................................................20

14.5     Distribution Agent. .........................................................................................20

14.6     Exemption from Certain Transfer Taxes and Recording Fees...................20

14.7     Further Authorization......................................................................................20

14.8     Means of Cash Payment.................................................................................20

14.9     Setoffs. .............................................................................................................21

14.10   Exculpation; Limitation of Liability; and Releases. ...................................21

14.11   Amendment or Modification of This Plan. ...................................................22

14.12   Severability of Plan Provisions......................................................................22

14.13   Revocation, Withdrawal, or Non-Consummation. .....................................22

14.14   Due Authorization by Claimants. .................................................................23

14.15   Filing of Additional Documentation. ...........................................................23

14.16   Governing Law. ...............................................................................................23

14.17   Successors and Assigns...................................................................................23

14.18   Notices. .............................................................................................................23

14.19   U.S. Trustee Fees. ...........................................................................................24

14.20   Implementation. ..............................................................................................24

14.21   No admission. ..................................................................................................24

14.22   Conflicts...........................................................................................................24

14.23   Trikeenan Lease of New York real property. ............................................. 24

Elgin-Butler Company, Trikeenan Tileworks of New York, Inc. and McIntyre Tile Company, Inc. (the "Debtors"), hereby submits this Joint Plan of Reorganization, as Modified by the modifications filed on November 18, 2014 (the "Plan"). A discussion of the Debtors' respective histories, businesses, properties and results of operations, and a summary of this Plan and certain related matters, can be found in the Disclosure Statement (the "Disclosure Statement") filed by the Debtors in support of this Plan.

## ARTICLE I.
## INTRODUCTION

The Debtors propose the following Plan pursuant to the provisions of Chapter 11 of the U.S. Bankruptcy Code, 11 U.S.C. § 101 *et seq.* Capitalized terms used in this Plan and not otherwise defined shall have the meanings ascribed to them in Article II of this Plan or, if not defined therein, in Section 101 of the Code.

Reference is hereby made to the Disclosure Statement, which discusses the history of the Debtors and their respective businesses, management, assets and liabilities. The Disclosure Statement also provides a summary of this Plan. YOU ARE URGED TO READ THE DISCLOSURE STATEMENT WITH CARE IN EVALUATING HOW THIS PLAN WILL AFFECT YOUR CLAIM(S).

## ARTICLE II.
## DEFINITIONS, RULES OF INTERPRETATION, AND CONSTRUCTION OF TERMS

For purposes of this Plan, any reference in this Plan to an existing document or exhibit filed or to be filed means that document or exhibit as it may have been or may be amended, supplemented, or otherwise modified.

The words "herein," "hereof" and "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular section, subsection or clause contained in this Plan, unless the context requires otherwise. The word "including" as used in this Plan means "including, without limitation." The word "or" when used in this Plan means "and/or" unless the context clearly indicates otherwise. Whenever from the context it appears appropriate, each term stated in either the singular or the plural includes the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender include the masculine, feminine and the neuter. The section headings contained in this Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of this Plan.

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

2.1.1 "**Administrative Claim**" means a Claim for costs and expenses of administration of the Bankruptcy Cases allowed under sections 503, 507(a)(2) or 507(b) of the Bankruptcy Code and approved by Final Order of the Bankruptcy Court, and all fees and costs assessed against the Estates pursuant to 28 U.S.C. § 1930. The term includes Professional Claims, Post-Petition Tax Claims, and Post-Confirmation Administrative Claims.

2.1.2 "**Allowed**" means with reference to a Claim or any portion thereof (a) a Claim against one or both of the Debtors, proof of which, if required, was filed on or before the Bar Date, which is not a Disputed Claim; (b) if no Proof of Claim was so filed, a Claim against the Debtors which has been or hereafter is listed by the Debtors in their Bankruptcy Schedules as liquidated in a known amount and not disputed or contingent and on account of which payment has not been made; or (c) an unknown Claim allowed hereunder or by a Final Order. An Allowed Claim does not include any Claim, or portion thereof, which is a Disallowed Claim or which has been subsequently withdrawn, disallowed, released or waived by the holder thereof or pursuant to a Final Order. Unless otherwise specifically provided in this Plan, or by a Final Order of the Court, an Allowed Claim shall not include any amount for punitive or exemplary damages, penalties, fines or post-petition interest.

2.1.3 "**Allowance Date**" means the date on which a claim becomes an Allowed Claim, unless such Claim is "Allowed" solely under clause (b) of the definition of such term, in which case, the Allowance Date shall be no earlier than the day after the last day for filing objections to proofs of Claim under this Plan.

2.1.4 "**Ballot**" means the form(s) distributed to holders of impaired Claims and Equity Interests on which is to be indicated the acceptance or rejection of the Plan.

2.1.5 "**Bankruptcy Cases**" means the jointly administered cases of the Debtors, pending as Case No. 14-11180, in the United States Bankruptcy Court for the Western District of Texas, Austin Division.

2.1.6 "**Bankruptcy Code**" means title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code.

2.1.7 "**Bankruptcy Court**" means the United States Bankruptcy Court for the Western District of Texas, Austin Division, or, if such court ceases to exercise jurisdiction, the court or adjunct thereof that exercises jurisdiction over the Bankruptcy Case.

2.1.8 "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as amended and promulgated under section 2075 of title 28 of the United States Code, together with the local bankruptcy rules for the Bankruptcy Court as now in effect or as the same may from time to time hereafter be amended.

2.1.9 "**Bar Date**" means the date set by the Bankruptcy Court as the last day for filing of proofs of Claim in the Bankruptcy Cases, which is December 1, 2014.

2.1.10 "**Books and Records**" means the books and records of the Debtors which are kept by or on behalf of the Debtors in the ordinary course of business, including, without limitation, all engineering reports, architectural plans, site plans and any drafts of the foregoing that relate to the Debtors including its property (whether currently or formerly owned), along with any permits, correspondence, bank accounts, tax records, corporate records, accounting records, software, computers, franchise tax matters and any other records of the Debtors whether in the possession of the Debtors, its manager, officers, directors, shareholders or any accountants, lawyers, brokers or any other Person.

2.1.11 **"Briar Capital Exit Facility"** means the revolving credit facility provided for under that certain Loan Agreement executed by and between Briar Capital, L.P., as lender, and the Debtors/Reorganized Debtor, as borrowers, together with all promissory notes, security agreements, certificates, and other documents and instruments executed or delivered in connection therewith. The Briar Capital Exit Facility shall be treated as set forth in Articles V and VI of the Plan and in accordance with any and all loan documents executed in connection with the Briar Capital Exit Facility.

2.1.12 **"Business Day"** means any day which is not a Saturday, a Sunday, or a legal holiday within the meaning of Bankruptcy Rule 9006(a).

2.1.13 **"Claim"** has the meaning set forth in Section 101(5) of the Bankruptcy Code.

2.1.14 **"Claimant"** means the holder of a Claim.

2.1.15 **"Confirmation Date"** means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

2.1.16 **"Confirmation Hearing"** means the hearing or hearings which will be held before the Bankruptcy Court under Bankruptcy Code § 1128 at which the Confirmation of this Plan will be requested.

2.1.17 **"Confirmation Order"** means an order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as such order may be amended, modified, or supplemented.

2.1.18 **"Convenience Claim"** means any General Unsecured Claim that is (a) Allowed in an amount of one thousand five hundred dollars ($1,500) or less or (b) Allowed in an amount greater than one thousand five hundred dollars ($1,500) but which is reduced to one thousand five thousand dollars ($1,500) by an irrevocable written election by the holder of such Allowed Claim made on a properly delivered Ballot; provided, however that (1) any Claim that was Allowed in excess of one thousand five hundred dollars ($1,500) may not be subdivided into multiple Claims of one thousand five hundred dollars ($1,500) or less for purposes of receiving treatment as a Convenience Claim, and (2) Claims in the same Class held by a Claimant shall be aggregated for purposes of determining whether such Claims are eligible to be Convenience Claims.

2.1.19 **"Debtors"** has the meaning set forth in the preamble to this Plan.

2.1.20 **"Disallowed Claim"** means a Claim or portion thereof that (i) has been disallowed by a Final Order; (ii) is identified in the Schedules in an amount of zero dollars or as contingent, unliquidated, or disputed and as to which a proof of Claim was not filed by the Bar Date; or (iii) is not identified in the Schedules and as to which no proof of Claim has been filed or deemed filed by the Bar Date.

2.1.21 **"Disclosure Statement"** means the Disclosure Statement with respect to this Plan, as approved by the Bankruptcy Court as containing adequate information for the purpose of dissemination and solicitation of votes on and confirmation of this Plan, as such Disclosure

Schedule may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

2.1.22 "**Disposition**", "**Disposed of**" and other forms of the word "**Dispose**", when capitalized herein, refer to the sale, transfer, or other hypothecation of an asset to a person other than the Debtors. The term means the transfer of any asset to the Bank in connection with an ABT Transfer.

2.1.23 "**Disputed Claim**" means a Claim, or any portion thereof, that is set forth in a filed Proof of Claim (a)(i) that has not been Scheduled, or (ii) has been Scheduled at zero or unknown or as contingent, unliquidated or disputed, (b) that differs in nature, amount or priority from the Bankruptcy Schedules, or (c) that is the subject of an objection filed by the Debtors or any other party-in-interest and which objection has not been withdrawn or overruled by a Final Order of the Bankruptcy Court; provided, however, that with respect to an Administrative Claim, "Disputed Claim" means an Administrative Claim that is not an Allowed Claim or a Disallowed Claim.

2.1.24 "**Disputed Claims Reserves**" means the reserve account established pursuant to Section 8.2 of this Plan.

2.1.25 "**Distribution**" means a distribution of money or property pursuant to the provisions of this Plan.

2.1.26 "**Distribution Agent**" shall be the person designated by the Debtors to make distributions under the Plan.

2.1.27 "**Distribution Date**" means any date on or after the Effective Date on which distributions of Available Cash should be made pursuant to this Plan.

2.1.28 "**Effective Date**" means the first Business Day immediately following the date on which all of the conditions specified in Section 7.2 of this Plan are first satisfied or waived.

2.1.29 "**Equity Interest**" means any ownership interest or share in the Debtors (including, without limitation, all options, warrants or other rights to obtain such an interest or share in the Debtors) whether or not transferable, preferred, common, voting, or denominated "stock" or a similar security.

2.1.30 "**Estate**" means, as to each Debtor, the estate created for such Debtor pursuant to section 541 of the Bankruptcy Code.

2.1.31 "**Estate Causes of Action**" means any and all rights, claims and causes of actions which the Chapter 11 Trustee, the Debtors or other appropriate party in interest (including NewCo) would be able to assert on behalf of the Estate under applicable state statute or the avoidance statutes of chapter 5 of the Bankruptcy Code, including actions under one or more of the provisions of Bankruptcy Code §§ 506, 542-551 and 553.

2.1.32 "**Estimation Motion**" has the meaning given such term in Section 5.1(b).

2.1.33 **"Exculpated Party" or "Exculpated Parties"** means the Debtors and their agents, officers, directors, managers, employees, representatives, advisors affiliates, shareholders, or members, or any of their successors or assigns

2.1.34 "**Executory Contract**" means, collectively, "executory contracts" and "unexpired leases" of the Debtors as of the Petition Date, as such terms are used in section 365 of the Bankruptcy Code.

2.1.35 "**Final Decree**" means the final decree entered by the Bankruptcy Court on or after the Effective Date pursuant to Bankruptcy Rule 3022.

2.1.36 "**Final Order**" means an order or judgment (a) as to which time to appeal, petition for certiorari or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for reargument or rehearing shall then be pending; or (b) in the event an appeal, writ of certiorari, or motion for reargument or rehearing has been filed or sought, such order or judgment shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which a motion for reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; provided, however, that no order or judgment shall fail to be a Final Order solely because of the filing or pendency of a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure unless such motion shall have been filed within ten (10) days of the entry of the order or judgment at issue.

2.1.37 "**General Unsecured Claim**" means any Claim that is not an Administrative Claim, a Priority Claim, a Priority Tax Claim, a Secured Claim, or a Convenience Class Claim and shall include any Claim arising from the rejection of an Executory Contract pursuant to 11 U.S.C. § 365.

2.1.38 "**Governmental Unit**" means a governmental unit as such term is defined in section 101(27) of the Bankruptcy Code.

2.1.39 "**Lien"** means a valid and enforceable lien, mortgage, security interest, pledge, charge, encumbrance, or other legally cognizable security device of any kind.

2.1.40 "**Notice of the Effective Date**" has the meaning given such term in Section 7.3.

2.1.41 "**Notice Parties**" means the Trustee, the Debtors, the Debtors' counsel, the Debtors, counsel to the Debtors, the United States Trustee, the Bank, the Bank's counsel, and all persons requesting notice in the Bankruptcy Case.

2.1.42 "**Ordinary Course of Business**" shall have the meaning provided under 11 U.S.C. § 363 and judicial interpretations thereof.

2.1.43 "**Person**" means and includes natural persons, corporations, limited partnerships, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other legal entities, irrespective of whether they are governments, agencies or political subdivisions thereof.

2.1.44 "**Petition Date**" means August 1, 2014.

2.1.45 "**Plan**" means this joint chapter 11 Plan, either in its present form or as it may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

2.1.46 "**Plan Supplement**" means all documents, forms, lists, and agreements contemplated under the Plan to effectuate the terms and conditions hereof.

2.1.47 "**Debtors**" shall have the meaning set forth in the Preamble to this Plan.

2.1.48 "**Post-Petition Tax Claims**" has the meaning set forth in Section 4.1(c)(iii).

2.1.49 "**Priority Claim**" means a Claim entitled to priority in payment under section 507(a) of the Bankruptcy Code, excluding any Claim that is an Administrative Claim or a Priority Tax Claim.

2.1.50 "**Priority Tax Claim**" means a Claim entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

2.1.51 "**Pro Rata Share**" means, with respect to any distribution to a Class under this Plan, as of any particular Distribution Date, proportionate sharing pursuant to which (a) the ratio that the cumulative amount of all funds distributed or reserved on account of each Claim in such Class bears to the amount of such Claim is equal to (b) the ratio that the cumulative amount distributed or reserved on account of all Claims in such Class bears to the total amount of all Claims in such Class that are entitled to receive a distribution or against which a reserve is required to be made.

2.1.52 "**Professional**" means any Person employed or to be compensated pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

2.1.53 "**Reorganized Debtor**" means the substantively consolidated Debtors after the Effective Date.

2.1.54 "**Professional Claim**" means a Claim by a Professional for compensation and/or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code in connection with an application made to the Bankruptcy Court in the Bankruptcy Cases.

2.1.55 "**Schedules**" means the Schedules and Statement of Financial Affairs filed by the respective Debtors with the clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

2.1.56 "**Secured Claim**" means a Claim that is alleged to be secured, in whole or in part, by a Lien that is not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law; or (ii) as a result of rights of setoff under section 553 of the Bankruptcy Code, but in any event only to the extent of the value, determined in accordance with

section 506(a) of the Bankruptcy Code, of the holder's interest in the Estates' interest in property or to the extent of the amount subject to such setoff, as the case may be.

2.1.57 "**Senior in Priority**" means, as to any of the following Classes or categories of unsecured Claims, classes or categories that have a higher priority, in the following descending order: (a) first, Administrative Claims; (b) second, Priority Tax Claims; and (c) third, General Unsecured Claims.

2.1.58 "**Substantial Consummation**" means the accomplishment of the transactions required under Article VII of this Plan, in accordance with Bankruptcy Code § 1101(2).

**ARTICLE III.**
**DESIGNATION OF CLAIMS AND INTERESTS**

3.1 **Summary.**

(a) Pursuant to Bankruptcy Code section 1122, a Claim or Equity Interest is placed in a particular Class for purposes of voting on this Plan and receiving Distributions under this Plan only to the extent (i) the Claim or Equity Interest qualifies within the description of that Class; and (ii) the Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest in that Class.

(b) A Claim or Equity Interest which is not an Allowed Claim or Allowed Equity Interest is not in any Class, and notwithstanding anything to the contrary contained in this Plan, no Distribution shall be made on account of any Claim or Equity Interest which is not an Allowed Claim or Allowed Equity Interest. In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims (including Professional Claims and Post-Petition Tax Claims) and Priority Tax Claims are not classified under this Plan and are excluded from the following Classes.

3.2 **Identification of Classes.**

1) Class 1: Tax Claims

2) Class 2: Allowed Secured Claim of Frost Bank

3) Class 3: Allowed Secured Claim of Ridgestone Bank

4) Class 4: Allowed Secured Claim of NYBDC

5) Class 5: Allowed Secured Claim of Steuben Trust Co.

6) Class 6: Allowed General Unsecured Claims

7) Class 7: Equipment Leases

8) Class 8: Unsecured Convenience Class

9) Class 9 – E.B. Liquidating Co.

7

10) Class 10: Jim Nichols

11) Class 11: Equity Interests

3.3 **Identification of Impaired and Unimpaired Classes.**
All classes of claims are impaired except Classes 1 and 9.

3.4 **Impaired Classes Entitled to Vote.**
All classes of claims are entitled to vote except Classes 1 and 9.

3.5 **Impaired Classes Not Entitled to Vote.**
None.

3.6 **Impaired Class of Equity Not Entitled to Vote.**
Classes 9 and 10 are deemed to reject.

3.7 **Controversy Concerning Classification, Impairment or Voting Rights.**

In the event a controversy or dispute should arise involving issues related to the classification, impairment or voting rights of any Creditor or Claimant under this Plan, whether before or after the Confirmation Date, the Bankruptcy Court may, after notice and a hearing, determine such controversy. Without limiting the foregoing, the Bankruptcy Court may estimate for voting purposes (i) the amount of any contingent or unliquidated Claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of these Bankruptcy Cases; and (ii) any right to payment arising from an equitable remedy for breach of performance. In addition, the Bankruptcy Court may, in accordance with section 506(b) of the Bankruptcy Code, conduct valuation hearings to determine the Allowed amount of any Secured Claim.

## ARTICLE IV.
## TREATMENT OF UNCLASSIFIED CLAIMS

4.1 **Administrative Claims.**

(a) **General:** Subject to the subsection 4.1(c), unless otherwise agreed to by such holder, on each Distribution Date, each holder of an Allowed Administrative Claim shall receive from the Distribution Agent out of Available Cash, an amount equal to the (1) lesser of (i) the then-unpaid Allowed amount of such Administrative Claim; or (ii) if the amount of Available Cash to be distributed is less than the total amount of all then-unpaid Allowed Administrative Claims entitled to share in such distribution, such holder's Pro Rata Share of such Available Cash, or (2) such amount as may be agreed to between the holder of such claim and the Debtors.

(b) **Payment of Statutory Fees:** All fees payable pursuant to 28 U.S.C. § 1930 shall be paid in cash, when due.

      (c)      **Bar Date for Administrative Claims:**

      (i)      **General Provisions:** Except as otherwise provided in this Article IV, requests for payment of Administrative Claims must be included within a motion or application and filed no later than forty-five (45) days after the Effective Date or by such earlier deadline governing a particular Administrative Claim contained in an order of the Bankruptcy Court entered before the Effective Date. Holders of Administrative Claims who do not file such requests by the applicable bar date specified in this subsection shall be forever barred from asserting such Claims against the Debtors or any of their respective property. Requests for payment of Administrative Claims included within a proof of claim are of no force and effect, and are disallowed in their entirety as of the Confirmation Date unless such Administrative Claim is subsequently filed in a timely fashion as provided herein.

      (ii)      **Professionals:** All professionals or other entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered before the Effective Date (including, without limitation, any compensation requested by any professional or any other entity for making a substantial contribution in the Debtors' Bankruptcy Cases) shall file and serve on the Notice Parties an application for final allowance of compensation and reimbursement of expenses no later than forty-five (45) days after the Effective Date. Objections to applications of professionals for compensation or reimbursement of expenses must be filed and served on the Notice Parties and the professionals to whose application the objections are addressed no later than twenty-one (21) days after the date on which the application for allowance is served.

      (iii)      **Post-Petition Tax Claims:** All requests for payment of Administrative Claims and other Claims by a Governmental Unit for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, which accrued or was assessed within the period from and including the Petition Date through and including the Effective Date ("**Post-Petition Tax Claims**") and for which no bar date has otherwise been previously established, must be filed on or before the later of (i) forty-five (45) days following the Effective Date; and (ii) ninety (90) days following the filing with the applicable Governmental Unit of the tax return for such taxes for such tax year or period. Any holder of any Post-Petition Tax Claim that is required to file a request for payment of such taxes and does not file such a Claim by the applicable bar date shall be forever barred from asserting any such Post-Petition Tax Claim against the Debtors or their property, whether any such Post- Petition Tax Claim is deemed to arise prior to, on, or after the Effective Date. Notwithstanding the foregoing, all taxes, penalties and interest assessed by Williamson County after the Petition Date and secured by the Ground Leases shall be deemed to constitute a part of its Class 1 Secured Claim, and not as an Administrative Claim.

## 4.2    **Allowed Priority Tax Claims.**

On each Distribution Date, each holder of an Allowed Priority Tax Claim shall receive from the Distribution Agent, out of Available Cash, an amount equal to the lesser of (i) the then-unpaid Allowed amount of such Priority Tax Claim; or such holder's Pro Rata Share of the Available Cash remaining after all Allowed Claims that are Senior in Priority have been paid in full or reserved against pursuant to Section 8.2 of this Plan.

# ARTICLE V.
## CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

5.1     Classified Claims.  Notwithstanding anything to the contrary below, the treatment of all Classified Claims described below shall be subject to, in all respects, the terms and conditions of the Briar Capital Exit Facility, including any and all security interests and payment obligations thereunder as described in Article VI.

5.1.1   Class 1 –Tax Claims.  Debtors owe prepetition taxes to Bastrop County, Sonoma County and Steuben County.  All holders of Allowed Tax Claims will retain their liens, if any, and shall receive forty-eight (48) equal monthly payments on the 15th day of each month beginning sixty (60) days from the Effective Date.  This Class is unimpaired.

5.1.2   Class 2 – Allowed Secured Claim of Frost.  Class 2 consists of the Allowed Claim of Frost.  Frost holds an Allowed Claim in the amount of $2,905,041.00 as of the Petition Date. Frost will receive payment of $2 million on the Effective Date, along with a convertible preferred security  in the amount of $500,000, payable from 5% of the EBITDA of the Reorganized Debtor in excess of 2 million, payable at a minimum of $25,000 annually or a maximum of $100,000 annually, in quarterly payments , with all remaining amounts due at the end of ten (10)  years from the Effective Date, together with such other terms, conditions and payments as detained in the Plan Support Agreement attached to the Disclosure Statement.  The $500,000 convertible secured security will be guaranteed by Matt Galvez.  Upon the Effective Date, any claims or causes of action held by the Estates against Frost are deemed released. This Class is impaired.

5.1.3   Class 3 – Allowed Secured Claim of Ridgestone.  Class 3 consists of the Allowed Claim of Ridgestone Bank.  As of the Petition Date, Ridgestone holds an Allowed Claim in the amount of $5,282,717.  Following the Effective Date, payments to Ridgestone will resume on the same terms and conditions set forth in the agreements between Ridgestone and the Debtors, with any unpaid, accrued amounts payable in a balloon payment at the maturity date of the loan(s). This Class is impaired.

5.1.4   Class 4 – Allowed Secured Claim of NYBDC. Class 3 consists of the Allowed Secured **Claim** of NYBDC for the amount due under the terms of a Loan Modification Agreement in the original principal amount of $265,000.00 dated December 22, 2011, and executed by Trikeenan NY.  Following the Effective Date, payments to NYBDC will resume on the same terms and conditions set forth in the agreements between NYBDC and the Debtors.  Any accrued unpaid interest will be paid within 30 days of the Effective Date and any unpaid, accrued principal installments will be added to the balloon payment due on the maturity date of the loan.  This Class is impaired.

5.1.5   Class 5 – Allowed Secured Claim of Steuben Trust Company.  Class 5 consists of the Allowed Secured Claim of Steuben Trust Company, being the amounts due to Steuben Trust Company by **Trikeenan** NY under that certain Promissory Note dated February 8, 2006, issued by the City of the Hornell Industrial Development Authority in the amount of $1,025,000 (the "STC IDA Note") and under that certain Promissory Note dated April 8, 2008, in the amount of $44,950 (the "STC Note"). The Claim 5 Claim arising under the STC IDA Note shall be repaid

by continuing rental payments due pursuant to the terms of the Lease with Steuben Trust Company which the Reorganized Debtor is assuming under the terms of this plan. Any unpaid, accrued amounts payable under the terms of the Lease shall be paid by the Reorganized Debtor within 30 days of the Effective Date in conjunction with assumption of the Lease. As long as the Reorganized Debtor is not in default under the Lease, Steuben Trust Company shall not disturb Debtor's possession, use and enjoyment of the premises described in the Lease. After the Effective Date, upon the occurrence of an event of default under the Lease, not cured within fifteen days, at the request of Steuben Trust Company, the Reorganized Debtor shall commence to escrow amounts due under the lease for taxes that, if unpaid, constitute a first priority lien upon the premises described in the Lease and interest shall commence to accrue on the outstanding cure obligation at the rate of 5% per annum. The escrow shall equal one-twelfth of the annual amount of such taxes and shall be due at the time of each month's rental payment. That portion of the Class Five Claim arising under the STC Note shall be paid by the Reorganized Debtor resuming payments on the same terms and conditions as set forth in the STC Note, with any unpaid, accrued amounts payable in a balloon payment on the maturity date of the note. This Class is impaired.

5.1.6  Class 6 – Allowed General Unsecured Claims.  Class 6 consists of the Allowed Claims of general unsecured creditors of each of the Debtors.  Following the Effective Date, holders of Allowed Class 5 Claims will receive payment in an amount equal to 100% of their Allowed Claim, payable in 18 equal monthly installments on the 15th day of each month, beginning on the 15th day of the month that at least sixty (60 days from the Effective Date.

5.1.7  Class 7 – Equipment Leases.  This Class consists of the Equipment Lease obligations owed to the Equipment Lessors listed on Exhibit "D" to the Disclosure Statement. The Holders of Claims in Class 7 will retain any liens on the leased equipment and will be paid according to the terms of the agreements between the Debtor(s) and the lessors.  Any arrearages will be paid at the end of the lease term. This Class is impaired.

5.1.8  Class 8 – Convenience Class Unsecured Claims.  Holders of Allowed Claims of general unsecured creditors whose claims are at or below $1,500 will be permitted, at their sole option, to elect to receive 80% of their Allowed Claim in two (2) equal monthly payments beginning thirty (30) days after the Effective Date.  The election will be made at the time of voting on the Debtors' Plan.  This Class is impaired.

5.1.9  Class 9 – Claim of EB Liquidating Co.  EB Liquidating Company holds a claim in the amount of $550,679.29 arising from the purchase of Elgin-Butler Brick Company by Elgin-Butler Brick Company. Of that amount, $431,412.00 is principal and $119,267.29 is pre-petition accrued interest. The Claim of EB Liquidating will be paid pursuant to the terms of the Settlement Agreement and the Settlement Note between the two parties. More specifically, if additional payments aggregating $231,412.00 are made prior to the "Maturity Date" under certain provisions of the Settlement Note and no "Default" occurs prior to such date, the outstanding balance of principal and interest will be released and forgiven. This class is unimpaired.

5.1.10  <u>Class 10 – Claim or Interest of Jim Nichols.</u>  Class 9 consists of the unsecured Claim of Jim Nichols, in the amount of $170,000.  This Claim shall be treated as a prepetition Equity Interest and disallowed.  This Class is impaired.

5.1.11  <u>Class 11 – Allowed Equity Interests.</u>  Current Equity Interests of Elgin-Butler will be canceled (and the ownership of Trikeenan and McIntyre canceled as part of the substantive consolidation of the Debtors), and new equity will be issued to Matt Galvez and the Chesapeake Group.  Matthew Galvez, who will provide new personal guarantees to the new Lender in order to pay out Frost Bank, and also as required by Frost Bank on its $500,000 subordinated payment obligation.  Mr. Galvez will own 81% of the Equity Interests in the Reorganized Debtor.  Chesapeake Group, which is providing additional equity to the business in the amount of $500,000 will hold 4% of the common equity and a 9% preferred equity (junior in payment rights to Frost, and not payable if payments to Frost are not current on the Class 2 obligations) convertible into 15% of the common stock of the Reorganized Debtor, resulting in a 19% common interest to Chesapeake on a fully diluted as-converted basis.

**ARTICLE VI.**
**MEANS FOR IMPLEMENTING PLAN**

A.  <u>**Substantive Consolidation**</u>:  On the Effective Date, the Debtors and their Estates shall be substantively consolidate for all purposes, including, but not limited to, voting on and distributions under the Plan.  As a result of the substantive consolidation: (i) all intercompany Claims by and among the Debtors will either be eliminated or shall remain in place but shall not be entitled to any distributions under the Plan; (ii) any obligations of any of the Debtors and all guaranties thereof executed by any of the Debtors will be deemed an obligation of each of the Debtors; (iii) any Claim filed or asserted against any of the Debtors will be deemed a Claim against each of the Debtors; and (iv) for purposes of determining the availability of any right of setoff under Section 553 of the Bankruptcy Code, the Debtors will be treated as one entity so that, subject to the other provisions of Section 553 of the Bankruptcy Code, debts due to any of the Debtors may be offset against the debts owed by any of the Debtors.  The substantive consolidation contemplated by this section shall not, however, cause any Debtor to be liable for any Claim or Interest for which it would not otherwise be liable absent the substantive consolidation under the Plan.

B.  <u>**Sources of Payments**</u>:  Additionally, on the Effective Date, the Reorganized Debtor will receive new equity contributions to Elgin-Butler in the amount of $500,000 and financing provided through the Briar Capital Exit Facility in an initial amount of up to $2.5 million.  The Briar Capital Exit Facility shall be secured by a valid and perfected security interest in and lien on all the personal property assets of the Debtors and Reorganized Debtor, in each case whether now owned or hereafter acquired, including, but not limited to, all of the Debtors' and Reorganized Debtor's accounts, inventory, general intangibles, chattel paper, investment property, instruments, documents, letter-of-credit rights, letters of credit, supporting obligations, commercial tort claims, equipment, and all moneys, proceeds (including insurance proceeds) and products of the foregoing in whatever form (the "Briar First Lien Collateral").  The security interests and liens in the Briar First Lien Collateral granted to Briar Capital, L.P. as security for the Briar Capital Exit Facility shall be deemed fully perfected in all respects on the Effective Date and shall, except with respect liens in place on the Effective Date in favor of Ridgestone

and NYBDC on certain equipment of the Debtors and Reorganized Debtor, be on a first-priority, senior-secured basis and shall be superior in priority to all other creditors and parties-in-interest..

Payments under the Plan will be made from the financing and equity described above, along with funds from the operation of the business of the Reorganized Debtor.

C. **Treatment of Executory Contracts and Unexpired Leases**.

(1) **Assumption or Rejection of Executory Contracts and Unexpired Leases**. On the Effective Date, except as otherwise provided in the Plan, any unexpired lease or executory contract that has not been previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court shall be deemed rejected by the Debtors under Sections 365(a) and 1123 of the Bankruptcy Code, other than those executory contracts and unexpired leases that are (a) listed on exhibit to be filed fourteen (14) days prior to the Confirmation hearing set for November 19, 2014 (as such list may be amended, supplemented or modified on or before the Confirmation Date) or (b) subject to a motion to reject that is pending on the Effective Date. Entry of the Confirmation Order shall constitute approval of such assumptions, and the rejection of the executory contracts or unexpired leases listed in the exhibit to be provided at the confirmation hearing hereto (as such list may be amended, supplemented or modified on or before the Confirmation Date), pursuant to Sections 365(a) and 1123 of the Bankruptcy Code. Any motions to assume executory contracts and unexpired leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.

(2) **Objections to Assumption and Assignments of Executory Contracts and Unexpired Leases**. To the extent that any party to an executory contract or unexpired lease identified for assumption, or any other party in interest, (a) asserts arrearages or damages pursuant to § 365(b)(1) of the Bankruptcy Code in an amount different from the amount, if any, set forth in the Petition and Schedules, (b) has any objection to the proposed adequate assurance of future performance, if required, or (c) has any other objection to the proposed assumption, cure, or assignment of a particular executory contract or unexpired lease on the terms and conditions provided for herein, all such asserted arrearages and any other objections shall be filed and served within the same deadline and in the same manner established for filing objections to Confirmation.

Failure to assert any arrearages different from the amount set forth in the Schedules (or the exhibits thereto), or to file an objection within the time period set forth above, shall constitute consent to the assumption, cure, and assignment on the terms provided for herein, including acknowledgment that (a) the Debtor (or its assignee) has provided adequate assurance of future performance, if required, (b) the amount identified for "cure," if any, is the amount necessary to compensate for any and all outstanding defaults or actual pecuniary loss under the executory contract or unexpired lease to be assumed, and (c) no other defaults exist under such executory contract or unexpired lease.

If an objection to assumption and assignment is filed based upon lack of adequate assurance of future performance or otherwise, and the Court determines that the Debtor cannot assume the executory contract or unexpired lease either as proposed or as may be proposed

pursuant to a modified proposal submitted by the Debtor, then the unexpired lease or executory contract shall automatically thereupon be deemed to have been rejected

(3) **Payments Related to Assumption of Executory Contracts and Unexpired Leases**. Any monetary defaults, including claims for actual pecuniary loss, under each executory contract and unexpired lease to be assumed under the Plan shall be satisfied, pursuant to Section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount, if any, as otherwise agreed by the parties, or as ordered by the Bankruptcy Court in Cash within 90 days following the Effective Date, or on such other terms as may be agreed to by the parties to such executory contract or unexpired lease. In the event of a dispute regarding (a) the amount of any cure or pecuniary loss payment, (b) the ability of Reorganized Debtor to provide adequate assurance of future performance under the contract or lease to be assumed, if required, or (c) any other matter pertaining to assumption, the cure or pecuniary loss payments required by § 365(b)(1) of the Bankruptcy Code shall be made within a reasonable time following entry of a Final Order resolving the dispute and approving assumption.

(4) **Bar Date for Rejection Damages**. If the rejection of an executory contract or unexpired lease pursuant to Article 6 of the Plan gives rise to a Claim by the other party or parties to such contract or lease, such Claim, to the extent that it is timely filed and is a Allowed Claim, shall be classified in Class 6; provided, however, that the Unsecured Claim arising from rejection shall be forever barred and shall not be enforceable against a Debtors, Reorganized Debtor, their successors or properties, unless a proof of Claim is filed and served on the Reorganized Debtor within 30 days after the date of the notice of the entry of an order of the Bankruptcy Court authorizing rejection of the executory contract or unexpired lease, which order may be the Confirmation Order.

(a) **Contracts to be Assumed**. Debtors are not required to designate contracts to be assumed or rejected until confirmation, but will provide a list of contracts to be assumed and rejected no later than fourteen (14) days prior to the Confirmation Hearing.

(b) **No Admission**. The listing by the Debtors of any contract or lease as an "executory contract" cannot be construed as an admission that such contract or lease is actually an executory contract under 11 U.S.C. §365 and shall not be a binding admission against the Debtors or Reorganized Debtor.

D. **Final Reporting; Closure of Case.**

When all Disputed Claims against the Debtors have become Allowed Claims or have been disallowed by Final Order and Substantial Consummation has been achieved, or at such earlier time as the Debtors deem appropriate, the Debtors shall file a final accounting with the Bankruptcy Court, together with a final report, and shall seek authority from the Bankruptcy Court to close the Bankruptcy Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE VII.
## CONDITIONS PRECEDENT

### 7.1 Conditions Precedent to Confirmation.

This Plan shall not be confirmed unless and until the Bankruptcy Court has entered the Confirmation Order in a form and substance satisfactory to the Debtors in their sole discretion.

### 7.2 Conditions Precedent to Effective Date.

This Plan shall not become effective and operative unless and until the Effective Date occurs. The Effective Date shall occur after the following conditions have been satisfied; provided, however, that the Debtors in their sole discretion may waive any or all of the following conditions, whereupon the Effective Date shall occur without further action by any Person:

(a) the Confirmation Order shall have been entered by the Bankruptcy Court and shall not be subject to a stay; and

(b) the Bankruptcy Court shall have determined that the Debtors are duly authorized to take actions contemplated in the Plan; and

(c) all other agreements contemplated by, or entered into pursuant to, the Plan and all documents required to be filed with the Plan Supplement, shall have been duly and validly executed and delivered by the parties thereto and all conditions to their effectiveness shall have been satisfied or waived.

### 7.3 Notice of the Effective Date.

On or before ten (10) Business Days after occurrence of the Effective Date, the Debtors shall mail or cause to be mailed to all holders of Claims and Equity Interests a notice (the "**Notice of the Effective Date**") that informs such holders of (a) entry of the Confirmation Order; (b) the occurrence of the Effective Date; (c) the deadline established under this Plan for the filing of Administrative Claims; and (c) such other matters as the Debtors deem to be appropriate.

## ARTICLE VIII.
## PROVISIONS GOVERNING DISTRIBUTIONS

### 8.1 Distributions Generally.

Distributions contemplated by the Plan shall be made by the Distribution Agent on the Effective Date or such other date as specified in the Plan.

### 8.2 Distributions on Disputed Claims.

In the event of a Distribution to holders of Claims in a class or category in which there exist any Disputed Claims, the Distribution Agent shall, in lieu of making such distribution to the holder of the Disputed Claim, make the distribution into the Disputed Claims Reserve, where it

will be held pending Allowance or disallowance of such Disputed Claim. The amount paid into the Disputed Claims Reserve with respect to such Disputed Claim shall be the amount that would be distributed to the holder if such Disputed Claim were Allowed in the lesser of (a) the amount stated in the proof of claim filed by the holder of such Disputed Claim, or (b) the estimated amount of such Disputed Claim, as determined by order of the Bankruptcy Court. Unless otherwise specifically set forth in this Plan or the Confirmation Order, no holder of a Disputed Claim shall be entitled to receive interest on any amounts deposited into the Disputed Claims Reserve, irrespective of whether the Distribution Agent receives such interest on the amounts so deposited.

### 8.3    Delivery of Distributions.

Subject to Bankruptcy Rule 9010, distributions to holders of Allowed Claims will be made by mail (1) at the address of each such holder as set forth on the proofs of claim filed by such holders, or (2) at the address reflected in the Schedules filed by the Debtors if no proof of claim is filed. If any Distribution is returned as undeliverable, the Distribution Agent shall use reasonable efforts to determine such Claimant's then current address. After reasonable efforts, if the Distribution Agent still cannot determine such Claimant's then-current address, no further Distributions shall be made to such Claimant unless and until the Distribution Agent is notified of such Claimant's then-current address. If the current address of a Claimant entitled to a Distribution has not been determined within six (6) months of the date on which the Distribution was first attempted to be made, then such Claimant: (i) shall no longer be a Claimant; and (ii) shall be deemed to have released such Claim.

### 8.4    Uncashed Checks.

Checks issued in respect of Allowed Claims will be null and void if not negotiated within ninety (90) days after the date of issuance thereof, and such Claimant will forfeit its right to such Distribution. In no event shall any funds escheat to the State of Texas.

### 8.5    Compliance with Tax Requirements.

In connection with this Plan, to the extent applicable, the Distribution Agent shall comply with all withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements.

## ARTICLE IX.
## PROVISIONS FOR THE RESOLUTION OF OBJECTIONS
## TO CLAIMS AND EQUITY INTERESTS

### 9.1    Objections to Claims or Equity Interests.

Subject to the provisions of this Article IX, any creditor or party-in-interest, including the Debtors, shall be authorized to object to Claims or Equity Interests so as to have the Bankruptcy Court determine the Allowed amount, if any, of such Claims or Equity Interests to be paid under this Plan. An objection to the allowance of a Claim or Equity Interest must be filed with the Bankruptcy Court and served upon the holder of the Claim or Equity Interest, as well the Notice

Parties, by no later than one hundred and twenty (120) days after the Effective Date or such other date set by order of the Bankruptcy Court. Prior to the expiration of thirty (30) days from the date of service of the objection, the Claimant whose Claim or Equity Interest was the subject of the objection must file with the Bankruptcy Court and serve a response to the objection upon the party who filed such objection, the Chapter 11 Trustee and the Debtors. Failure to file and serve such a response within the thirty (30) days shall cause the Bankruptcy Court to grant the relief requested in the objection.

**9.2    Amendments to Claims; Claims filed After the Confirmation Date.**

Except as otherwise provided in this Plan, a Claim may not be filed with the Bankruptcy Court or amended after the Confirmation Date without the prior authorization of the Bankruptcy Court. Except as otherwise provided in this Plan, any new or amended Claim filed without the prior approval of the Bankruptcy Court after the Confirmation Date shall be deemed disallowed in full and expunged without any action by any person.

**ARTICLE X.**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**10.1    Rejection of Executory Contracts.**

Any and all Executory Contracts of the Debtors which, as of the Effective Date, have not been assumed or rejected, shall be deemed rejected. Any Claim arising out of the rejection of an Executory Contract shall be filed and served on counsel for the Debtors within thirty (30) days from the Effective Date. Any such Claims not filed by such date shall be discharged and forever barred. All creditors and parties in interest shall be authorized to file an objection to any proof of Claim based on the rejection of an Executory Contract pursuant to this Plan. The objection to any such proof of Claim shall be filed not later than one hundred and twenty days (120) after the Effective Date. Each Allowed Claim arising from the rejection of an Executory Contract shall be treated as an Allowed Class 4 Claim.

**ARTICLE XI.**
**EFFECT OF REJECTION BY ONE OR MORE CLASSES**

**11.1    Impaired Classes to Vote.**

Each impaired class shall be entitled to vote separately to accept or reject this Plan. A holder of a Disputed Claim which has not been temporarily allowed for purposes of voting on this Plan may vote only in an amount equal to the portion, if any, of such Claim shown as fixed, liquidated, and undisputed in the applicable Debtor's Schedules. The Debtors reserve the right to request that the Bankruptcy Court estimate the amount of any Claim for purposes of voting on the Plan.

**11.2    Acceptance by Class.**

A class of Claims shall have accepted this Plan if this Plan is accepted by at least two thirds (2/3) in amount and more than one half (1/2) in number of the Allowed Claims of such class that have voted to accept or reject this Plan.

### 11.3    Reservation of Cramdown Rights.

In the event that any impaired class shall fail to accept this Plan in accordance with section 1129(a) of the Bankruptcy Code, the Debtors reserve the right to request that the Bankruptcy Court confirm this Plan in accordance with the provisions of the section 1129(b) of the Bankruptcy Code.

## ARTICLE XII.
## EFFECT OF CONFIRMATION

### 12.1    Generally.

As of the Confirmation Date, this Plan shall be binding upon the Debtors, all Claimants, and all other Persons who are affected in any manner by this Plan, subject to the occurrence of the Effective Date and the satisfaction or waiver of the conditions set forth in Article VII.

### 12.2    Property.

**All property of the Estate will vest in the Reorganized Debtor on the Effective Date.**

## ARTICLE XIII.
## RETENTION OF JURISDICTION

### 13.1    Exclusive Bankruptcy Court Jurisdiction.

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain and have such jurisdiction over the Bankruptcy Case as is legally permissible, including, without limitation, for the following purposes:

(a)    To allow, disallow, determine, liquidate, classify or establish the priority or secured or unsecured status of, or to estimate, any Claim or Equity Interest, including, without limitation, resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of claims or interests;

(b)    To determine any and all applications or motions pending before the Bankruptcy Court on the Effective Date of this Plan, including, without limitation, any motions for the rejection, assumption or assumption and assignment of any Executory Contract;

(c)    To ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

(d)    Except as otherwise provided in this Plan, to enter orders approving any requests for compensation for professional services rendered and costs incurred in connection with these bankruptcy proceedings or in connection with this Plan and incident to these bankruptcy proceedings;

(e)     To determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of this Plan or any person's obligations in connection with this Plan;

(f)     To consider and act upon the compromise and settlement of any claim or cause of action by or against the Debtors;

(g)     To decide or resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters, or grant or deny any applications involving the Debtors that may be pending on the Effective Date or that may be brought by the Debtors after the Effective Date, including claims arising under Chapter 5 of the Bankruptcy Code;

(h)     To issue orders in aid of execution and implementation of this Plan to the extent authorized by 11 U. S.C. § 1142 or provided by the terms of this Plan;

(i)     To decide issues concerning the federal or state tax liability of the Debtors which may arise in connection with the confirmation or consummation of this Plan; and

(j)     To enter an order closing the Bankruptcy Case.

**13.2    Limitation on Jurisdiction.**

In no event shall the provisions of this Plan be deemed to confer the Bankruptcy Court jurisdiction greater than that established by the provisions of 28 U.S.C. §§ 157 and 1334.

## ARTICLE XIV.
## MISCELLANEOUS PROVISIONS

**14.1    Effectuating Documents and Further Transactions.**

The Debtors and, after the Effective Date, Reorganized Debtors are authorized, required and directed to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and take such actions as may be reasonably necessary or appropriate to effectuate, implement and consummate the Plan without any further evidence of the terms and conditions of the Plan, the Reorganized Debtor will be heretofore and without any further need of court orders deemed to be authorized to execute any of the aforesaid documents or agreements or to take any of the aforementioned steps to confirm, implement and consummate the Plan.  The Plan will be binding upon the Debtors, the holders of Claims, and the holders of Equity Interests; and the Court may issue such orders in aid of consummation of the Plan under sections 105 and 1142 of the Bankruptcy Code.

**14.2    Severability.**

In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void or unenforceable.  The invalidity, voidness

or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

### 14.3 Final Allowance.

Notwithstanding anything contained above, all distributions to Classes under this Plan will only be made after the creditors in said Classes have their Claims fully fixed and allowed by the Court. However, objections on claims in one Class will not preclude distribution to creditors in other Classes where no disputes exist regarding Claims in the other Classes.

### 14.4 Consummation.

Upon completion of all payments and all transactions contemplated by this Plan, the Plan shall be deemed fully consummated, and this case shall be closed. Until substantial consummation occurs, the Debtors may move for and be granted modifications of this Plan.

### 14.5 Distribution Agent.

The Reorganized Debtor shall act as disbursing agent under the Plan. The rights and duties of the Debtor shall be transferred to the Debtors after Confirmation, so that the Debtors will receive all rights for the Debtor and be imbued and granted all the rights of a trustee in bankruptcy to pursue causes of action after Confirmation.

### 14.6 Exemption from Certain Transfer Taxes and Recording Fees.

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers from the Debtors, or any agreement regarding the transfer of title to or ownership of any of the Debtors' real or personal property, will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the forgoing instruments or other documents without the payment of any such tax or governmental assessment.

### 14.7 Further Authorization.

The Debtors shall be entitled to seek such orders, judgments, injunctions, and rulings as they deem necessary to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

### 14.8 Means of Cash Payment.

Payments of Cash made pursuant to this Plan shall be made, at the option and sole discretion of the Debtors, by checks drawn on, or wire transfer from, a domestic bank selected by the Debtors.

**14.9    Setoffs.**

The Debtors may, pursuant to applicable law, but shall not be required to, set off against any Claim the payments or other distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtor or the Debtors may have against the holder of such Claim; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claim that the Debtor or the Debtors may have against such holder.

**14.10    Exculpation; Limitation of Liability; and Releases.**

(a)    None of the Exculpated Parties shall have or incur any liability to any person or any of their respective agents, employees, representatives, advisors, attorneys, affiliates, shareholders, or members, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Bankruptcy Cases, the Disclosure Statement, the transactions contemplated by or described in the Plan or Disclosure Statement, the formulation, negotiation, or implementation of this Plan, the pursuit of Confirmation of this Plan, the Confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan.

(b)    Notwithstanding any other provisions of this Plan, no person, no person's agents, directors, managers, officers, employees, representatives, advisors, attorneys, affiliates, shareholders, or member and no person's successors or assigns shall have any right of action against any of the Exculpated Parties for any act or omission in connection with, relating to, or arising out of, the Bankruptcy Cases, the Disclosure Statement, the transactions contemplated by or described in the Plan or Disclosure Statement, the formulation, negotiation, or implementation of this Plan, the pursuit of Confirmation of this Plan, the Confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan.

(c)    Effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, and in consideration of the terms and provisions of this Plan, (1) the Claimants that (a) voted to accept the Plan (or are deemed to accept the Plan), or (b) consented to the confirmation of the Plan, and (2) to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, the Debtors and each holder of an Equity Interest (collectively, the "Releasing Parties" and each a "Releasing Party") shall release, unconditionally and forever, the Debtors and their predecessors and successors, and each of their respective present and former members, officers, directors, managers, agents, financial advisors, attorneys, employees, equity holders, parent corporations, subsidiaries, partners, affiliates, and representatives from any and all claims or causes of action that exist as of the Effective Date and arise from or relate to, in any manner, in whole or in part, the operation of the business of the Debtor, the subject matter of, or the transaction or event giving rise to, the business or contractual arrangements between the Debtor and such holder, any restructuring of such claim or equity prior to the Petition Date, or any act, omission, occurrence, or event in any manner related to such subject matter, transaction or obligation, or occurring or existing on property owned by the Debtor, or arising out of the Bankruptcy Cases, including, but not limited to, the pursuit of confirmation of the Plan, the consummation thereof, the administration thereof, or the property to

be distributed thereunder. Nothing herein shall be deemed to release Matt Galvez from his guaranty obligations set forth under section 5.1.2.

(d) Nothing herein shall be deemed to release any guarantor of debt owed by Debtors from any guaranty obligation or to release any lien or security interest granted by such guarantor to secure any guaranty obligation.

### 14.11 Amendment or Modification of This Plan.

Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123 and 1125 of the Bankruptcy Code, the Debtors reserve the right to alter, amend, or modify this Plan at any time prior to or after the Confirmation Date, including, without limitation the right to withdraw the Plan. A holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

### 14.12 Severability of Plan Provisions.

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power, upon the request of the Debtors to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 14.13 Revocation, Withdrawal, or Non-Consummation.

The Debtors reserve the right to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file other plans of reorganization. If the Debtors revoke or withdraws this Plan, or if Confirmation or consummation of this Plan does not occur, then (i) this Plan shall be null and void in all respects, (ii) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount any Claim or Class of Claims or any release contemplated hereby), assumption of executory contracts or leases effected by this Plan, and any document or agreement executed pursuant to this Plan, and no acts taken in preparation for consummation of this Plan, shall (A) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor or any other person, (B) prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtor, or (C) constitute an admission of any sort by the Debtors or any other person.

### 14.14   Due Authorization by Claimants.

Each and every Claimant who elects to participate in the Distributions provided for herein warrants that such Claimant is authorized to accept, in consideration of its Claim against the Debtors, the Distributions provided for in this Plan, and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by the Claimant under this Plan.

### 14.15   Filing of Additional Documentation.

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

### 14.16   Governing Law.

Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof.

### 14.17   Successors and Assigns.

The rights, benefits and obligations of any person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such person.

### 14.18   Notices.

Any notice required to be given under this Plan shall be in writing. Any notice that is allowed or required hereunder except for notice of change of address shall be considered complete on the earlier of (a) three (3) days following the date the notice is sent by United States mail, postage prepaid, or by overnight courier service, or in the case of mailing to a non-United States address air mail, postage prepaid, or personally delivered; (b) the date the notice is actually received by facsimile or computer transmission; or (c) three (3) days following the date the notice is sent.

> **(a)**   If to the Debtors, at:
>
> Hohmann, Taube & Summers, LLP
> Attn: Mark C. Taylor
> 100 Congress Avenue, 18th Floor
> Austin, Texas 78701

     **(b)**    If to the U.S. Trustee, at:

         United States Trustee
         Western District of Texas, Austin Office
         903 San Jacinto, Room 230
         Austin, Texas 78701

**14.19  U.S. Trustee Fees.**

All fees payable pursuant to Section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid on or before the Effective Date. The Reorganized Debtors shall timely file all post-confirmation reports as required by the U.S. Trustee until this case is closed, converted or dismissed.

**14.20  Implementation.**

The Debtors and, after the Effective Date, Reorganized Debtors shall take all steps and execute all documents necessary to implement this Plan including but not limited to appropriate releases, purchase and sale agreements, brokerage contracts, deeds and bills of sale necessary to effectuate the provisions contained in this Plan.

**14.21  No admission.**

Neither the filing of this Plan, nor any statement or provision contained herein, nor the taking by the Debtors of any action to enforce and implement this Plan shall be deemed an admission by the Debtors with respect to any matter set forth herein, including, without limitation, liability on any Claim or Equity Interest or the propriety of the classification of any Claim or Equity Interest.

**14.22  Conflicts.**

In the event that provisions of the Disclosure Statement and provisions of this Plan conflict, the terms of this Plan shall govern.

**14.23  Trikeenan Lease of New York real property**: As long as the Reorganized Debtors are not in default under the Lease (as described in Section 5.1.5 above), including the cure payments due under the Lease, neither Steuben Trust Company nor Statewide Zone Capital Corporation of New York shall disturb the Reorganized Debtors' possession, use and enjoyment of the premises described in the Lease. The remaining balance under the STC IDA Note at the end of the Lease term and any unpaid amounts due to Statewide Zone Capital Corporation of New York after the plan payments provided under the Plan shall remain secured by the respective mortgages held by Steuben Trust Company and Statewide Zone Capital Corporation of New York on the Leased Premises, but shall not be the obligation of the Reorganized Debtor. Nothing herein or in the Plan shall create any liability of the Reorganized Debtor to pay any amounts due under the STC IDA Note in excess of the lease payments due under the Lease.

[SIGNATURE PAGE FOLLOWS]

Dated: November 19, 2014.

Respectfully submitted,

ELGIN-BUTLER COMPANY, TRIKEENAN TILEWORKS INC. OF NEW YORK and MCINTYRE TILE COMPANY, INC.

By: _/s/ Matthew Galvez_____
      Matthew Galvez


Respectfully submitted,

HOHMANN, TAUBE & SUMMERS, L.L.P.


By:_/s/ Mark C. Taylor_____
      Mark C. Taylor
      State Bar No. 19713225
      100 Congress Avenue, 18th Floor
      Austin, Texas 78701
      (512) 472-5997
      (512) 472-5248 (FAX)

ATTORNEYS FOR DEBTORS