IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ELGIN-BUTLER COMPANY, | § | CASE NO. 14-11180-TMD |
| TRIKEENAN TILEWORKS, INC. | § | |
| OF NEW YORK, | § | CASE NO. 14-11181-TMD |
| AND MCINTYRE TILE COMPANY, INC., | § | CASE NO. 14-11182-TMD |
| | § | |
| Jointly Administered Debtors | § | CHAPTER 11 |
| | § | Jointly Administered Under |
| | § | CASE NO. 14-11180-TMD |

**FINAL APPLICATION OF HOHMANN, TAUBE & SUMMERS, L.L.P.,
COUNSEL TO DEBTORS FOR ALLOWANCE OF COMPENSATION
FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED**

**This pleading requests relief that may be adverse to your interests.**

**If no timely response is filed within 21 days from the date of service, the relief requested herein may be granted without a hearing being held.**

**A timely filed response is necessary for a hearing to be held.**

TO THE HONORABLE TONY M. DAVIS, UNITED STATES BANKRUPTCY JUDGE:

Hohmann, Taube & Summers, L.L.P. ("HTS"), counsel to Debtors Elgin-Butler Company, Trikeenan Tileworks, Inc. of New York, and McIntyre Tile Company, Inc. (the "Debtors"), submits its Final Application for Allowance of Compensation for Services Rendered and Reimbursement for Expenses Incurred ("Application") and requests: (i) approval of fees of $57,496.00 and expenses of $13,829.27 for the period from October 1, 2014 through December 31, 2014; (ii) final approval of fees earned in the amount of $47,644.25 and expenses incurred in the amount of $11,109.73, totaling $58,753.98, previously awarded on an interim basis; and

(iii) authority to receive payment of amounts. As detailed herein and summarized in the Fee Application Summary attached hereto as **Exhibit A**, HTS has expended [**145.2 for this Application Period, 262.5 overall**] hours, at an average hourly rate of [$**396.98 for this Application Period, 400.53 overall**], in representation of the Debtors.

## NARRATIVE SUMMARY

1. On August 1, 2014 (the "Petition Date"), the Debtors each filed a voluntary petition for relief pursuant to Chapter 11, Title 11 of the United States Code ("Bankruptcy Code"). The Debtors are acting as Debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. These cases are being jointly administered.

2. On the Petition Date, the Debtors filed an Application to Employ HTS as counsel, which this Court granted by Order dated August 28, 2014 [Dkt. 75] (the "Retention Order").[1]

3. The Fee Application Summary required by Rule 2016(a)(1) of the Local Bankruptcy Rules is attached hereto as **Exhibit A**. A copy of the Retention Order is attached hereto as **Exhibit C**.

4. For HTS's representation of the Debtor, the Application requests fees on an average hourly rate of [$**396.98 for this Application Period, 400.53 overall**]. Specifically, the professionals and paraprofessionals involved in the representation and their hourly rates for bankruptcy and non-bankruptcy representations are listed below:

---

[1] HTS is filing a motion to alter the time period specified for filing a fee application under 11 U.S.C. §331.

| PROFESSIONAL | TITLE | HOURLY RATE | TOTAL HOURS | TOTAL FEES |
|---|---|---|---|---|
| **FIRST INTERIM APPLICATION PERIOD** | | | | |
| Mark C. Taylor | Partner | $425 | 107.7 | $45,772.50 |
| Eric J. Taube | Partner | $550 | 1.4 | $770.00 |
| Morris Weiss | Partner | $465 | 0.70 | $325.50 |
| Cleve Burke | Associate | $275 | 0.20 | $55.00 |
| Tammy Greenblum | Paralegal | $80 | 0.5 | $40.00 |
| Ann Marie Jezisek | Paralegal | $125 | 3.05 | $381.25 |
| Sherri Savala | Paralegal | $80 | 3.75 | $300.00 |
| TOTAL | | | **117.30** | **$47,644.25** |
| **CURRENT APPLICATION PERIOD** | | | | |
| Mark C. Taylor | Partner | $425 | 116.8 | $49,640.00 |
| Morris Weiss | Partner | $465 | 10.9 | $5,068.50 |
| Chris Bradley | Associate | $275 | 4.0 | $1,100.00 |
| Ann Marie Jezisek | Paralegal | $125 | 13.5 | $1,687.50 |
| TOTAL | | | **145.2** | **$57,496.00** |
| **OVERALL** | | | | |
| | | TOTAL | **262.5** | **$105,140.25** |

5. One prior application for compensation or reimbursement of expenses has been made by HTS, filed on October 29, 2014 [Dkt. 182] which was approved by this Court on November 19, 2014 [Dkt. 210].

6. This Application covers the period from October 1, 2014 through December 31, 2014 (the "Application Period"), along with seeking final approval of the fees and expenses awarded previously.

7. The Compensation Support Exhibit and Reimbursement Support Exhibit required by Rule 2016(a)(2) and (3) of the Local Bankruptcy Rules is attached hereto as **Exhibit B**.

## CASE STATUS

8. The Court confirmed the Debtors' Joint Plan of Reorganization by Order dated November 20, 2014 [Dkt. 213]. The Effective date of the Plan was December 22, 2014.

## PROJECT SUMMARY AND SERVICES RENDERED BY HTS

Detailed fee bills for each of the categories below are attached as **Exhibits D-1 through D-6**.

9. <u>Cash Collateral and Business Operations</u>. This category includes time for dealing with cash collateral motions, negotiations, orders and hearings, as well as motions relating to payment of critical vendors, continuation of utility services and payment of prepetition amounts due to employees. As detailed in **Exhibit D-1**, during the Application Period, HTS spent 31.4 hours, for fees totaling $13,345.00. Expenses totaled $77.16. The total fees and expenses for this category (including amounts awarded on an interim basis) were $38,782.50 in fees and $167.44 in expenses.

10. <u>Case Administration</u>. This category includes time for preparation of schedules and statements of financial affairs for each Debtor, preparation of the report for the Initial Debtor Conference for each Debtor, attending the meeting of creditors and debtor conference, work related to the Motion to Limit Notice, and certain time relating to various motions and hearings for the Debtors. As detailed in **Exhibit D-2**, during the Application Period, HTS spent

15.5 hours for fees totaling $6,213.50. Expenses totaled $4,405.39, primarily due to large copying and mailing expenses. The total fees and expenses for this category (including amounts awarded on an interim basis) were $21,431.00 in fees and $11578.55 in expenses.

11. <u>Claims</u>. This category includes time dealing with claims analysis. As detailed in **Exhibit D-3**, during the Application Period, HTS spent 0.3 hours for fees totaling $127.50. Expenses totaled $18.65. No amounts were previously awarded for this category.

12. <u>Fees and Employment</u>. This category includes time for preparation of and the hearing on HTS' First Interim Fee Application. As detailed in **Exhibit D-4**, during the Application Period, HTS spent 4.2 hours for fees totaling $1,785.00. Expenses totaled $416.38. No amounts were previously awarded for this category.

13. <u>Plan and Disclosure Statement</u>. As detailed in **Exhibit D-5**, HTS assisted the Debtors with drafting and negotiation of a Plan Support Agreement with Frost Bank, negotiations with Frost Bank for a plan, work drafting a plan and disclosure statement, time spent in negotiations for amended versions of each, hearings for approval of the disclosure statement, assistance with the voting process, negotiating lending to confirmation, and preparation for and attendance at the confirmation hearing. Hours for this category totaled 48.3, for fees totaling $18,577.50, and expenses totaled $6,601.90 (primarily for copying and postage). The total fees and expenses for this category (including amounts awarded on an interim basis) were $25,193.00 in fees and $6,614.50 in expenses.

14. <u>Post-Confirmation.</u> This category includes time for efforts leading to consummation of the Plan and taking measures necessary for the Effective Date, including preparing numerous corporate and financing documents and negotiating with lenders and investors. As detailed in **Exhibit D-6**, during the Application Period, HTS spent 45.5 hours for

fees totaling $17,447.50. Expenses totaled $2,309.79. No amounts were previously awarded for this category.

## EXPENSES INCURRED BY HTS

15. HTS has incurred [$**13,829.27 for this Application Period, 24,939.00 overall**] in reasonable and necessary expenses relating to its representation of the Debtors in this case. The bulk of these expenses relate to copying and mailing expenses, due to the large number of creditors and filings in this case. Expenses exceeding $100.00 were for third- party charges for copying and postage expenses, as set forth in the attached **Exhibits D-1 through D-6**. Expenses are itemized on the attached invoices.[2] Pursuant to the Retention Order and subject to Bankruptcy Court approval, HTS is entitled to reimbursement of actual and necessary expenses incurred in the rendition of its services to the Debtors. In explanation of certain expense categories, HTS states as follows:

   a. Copying. HTS charges 15 cents per page for photocopying. The charge is reasonable in view of the fact that (i) the rate is the same rate charged by HTS to other clients, and (ii) the clerk of this Court charges 50 cents per page, not including certification, for all copies.

   b. Fax charges. When necessary, HTS uses telecopy and facsimile machines to quickly communicate documents relating to this case. Because such communication involves equipment and personnel not used by all clients, HTS routinely charges the client for such services at the rate of 10 cents per page for outgoing faxes, with no charge for incoming faxes.

   c. Computer Research. Charges for use of Westlaw and other on-line research tools are charged only to clients whose situation require the use of such tools, thus reducing costs to the clients as much as possible. Those on-line services are invaluable for up-to-date research, allowing rapid access to numerous resources that might otherwise be difficult to obtain. The charges to clients are the same as that charged to HTS by the provider of the services.

   d. Delivery Services. On occasion, overnight or hand-delivery of documents and other materials is required to expedite receipt of critical documents or

---

[2] Invoices for expenses exceeding $100.00 are attached as **Exhibit D-7**.

information. Since many clients do not require such expedited service, HTS bills such services directly to the client needing them, instead of including the services as a component of hourly rates. HTS charges the client the cost of such service. There is no charge when an employee of HTS hand delivers packages; a procedure which is employed whenever possible.

16. HTS has made every effort to minimize its disbursements in this case. The expenses incurred in the rendition of professional services are necessary, reasonable and justified under the circumstances to serve the needs of the Debtor, its estate and creditors.

## **LEGAL STANDARDS**

17. Pursuant to section 330 of the Bankruptcy Code, this Court may award to professional persons employed under section 327 reasonable compensation for actual, necessary services rendered and reimbursement for actual, necessary expenses incurred. Three well-established guidelines have been established by Courts for evaluating fee applications: the two-step analysis, the "lodestar" approach, and the *Johnson* factors.

18. In the two-step analysis, the Court engages in the two-step analysis imposed by section 330(a)(1) of the Bankruptcy Code:

(1) determine whether the services rendered were necessary and appropriate; and

(2) evaluate whether the compensation sought is reasonable.

*In re Temple Retirement Community, Inc.*, 97 Bankr. 333, 338 (Bankr. W.D. Tex. 1989).

19. Under the guideline commonly known as the lodestar approach, the Court determines a reasonable attorney fee in a case by multiplying the number of hours expended by an hourly rate. *Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air*, 478 U.S. 456 (1987).

20. The Johnson factors were established by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The twelve *Johnson* factors for reviewing fee applications include the time and labor required; the novelty and difficulty of the questions; the skill requisite to perform the legal service properly; the preclusion of other employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent; time limitations imposed by the client or circumstances; the amount involved and the results obtained; the experience, reputation and ability of the attorneys; the undesirability of the case; the nature and length of the profession of relationship with the client; and awards in similar cases. *Johnson*, 488 F.2d at 717-719.

21. Under each of the guidelines, HTS submits the fees requested herein are fair and reasonable.

## APPLICATION OF GUIDELINES

22. As required by the first step of the two-step analysis imposed by section 330(a)(1) analysis, all services rendered in this case by HTS were necessary and appropriate. The actions taken by HTS were essential to the efforts to reorganize the Debtors, which have resulted in an agreement with most creditors and a plan confirmation hearing set for November 19, 2014.

23. Likewise with respect to the second step of the analysis, the compensation sought by HTS is competitive. HTS committed the bankruptcy expertise of Mark Taylor (supplemented with some partner-level, associate and paralegal assistance where appropriate) who during the Application period, worked to control fees and expenses related to this bankruptcy by working to resolve issues by agreement. HTS also utilized non-billing personnel to provide the attorneys with support. Many services rendered by HTS's non-billing personnel are regularly allowed as paralegal services in similar representations. HTS staffing decisions resulted in efficient case

management. The issues in this bankruptcy case have been addressed promptly, properly and with no duplication.

24. Under the lodestar method, in aggregate, HTS rendered [**145.2 for this Application Period, 262.5 overall**] hours of service at an average hourly rate of [$**396.98 for this Application Period, 400.53 overall**], which HTS submits is within the range of reasonable fees for cases such as this. The issues in this case have been addressed by drawing on the expertise of HTS' attorneys, not by extensive hours in a library or litigating.

25. The twelve *Johnson* factors also support approval of the interim fees requested in this case.

    a. <u>Time and Labor Required</u>. HTS expended 145.2 hours in the Application Period to represent the Debtor and 262.5 hours total. HTS attempted to avoid overlap and layering of attorneys.

    b. <u>Novelty and Difficulty of the Questions</u>. Representation of the Debtors has involved complex issues relating to dealing with separate debtors, substantive consolidation issues, dealing with multiple secured creditors, working through cash collateral and plan issues, and negotiating with multiple constituencies. Substantial effort was required for obtaining an agreement on and confirmation of the Plan, and the matters relating to substantive consolidation of the Debtor's post-confirmation.

    c. <u>Skill Required</u>. The case has required a fair amount of skill because of the complexity of the issues discussed above.

    d. <u>Preclusion of Other Employment</u>. This representation has not caused significant dislocation or preclusion of other employment by HTS.

e. <u>Customary Fee</u>. If this case were not one under the Bankruptcy Code, HTS would charge the Debtors, and expect to receive on a current basis, an amount at least equal to the amounts herein requested for the professional services rendered. HTS represents and would demonstrate that the fees are competitive for this region and customary for the degree of skill and expertise required in the representation of the Debtors by other experienced bankruptcy practitioners and other professionals in this district.

f. <u>Fixed or Contingent Fee</u>. HTS accepted this representation on an hourly basis with a retainer approved by the Bankruptcy Court. Collection of all amounts beyond the initial retainer are, by their nature, contingent. In this case, it is unlikely there will be any estate assets to provide payment to HTS.

g. <u>Time Limitations</u>. Time limitations were not a substantial factor.

h. <u>Amounts and Results</u>. Debtor, with HTS' assistance, obtained confirmation of the Plan on a consensual basis.

i. <u>Experience, Reputation and Ability</u>. Mr. Taylor is highly experienced in bankruptcy and insolvency work, and has been actively involved in many bankruptcy cases in the Western District of Texas and elsewhere. HTS enjoys a reputation as providing quality legal services without inefficiencies and duplications which occasionally occur in representations by larger, full service firms.

j. <u>Undesirability of the Case</u>. There are no particular undesirable features of this case.

k. <u>Relationship with Client</u>. HTS had no pre-existing relationship with the Debtors nor their principals prior to this case. The Debtors chose HTS because of its reputation in matters of this type.

l. <u>Awards in Similar Cases</u>. The compensation sought by HTS is this case is the commensurate rates sought by professionals in other cases in this district.

## **CONCLUSION**

For the foregoing reasons, HTS requests approval of fees and expenses as set forth above.

A proposed Order is attached hereto as **Exhibit E.**

Respectfully submitted,

HOHMANN, TAUBE & SUMMERS, L.L.P.

By: */s/ Mark C. Taylor*
    Mark C. Taylor
    State Bar No. 19713225
    100 Congress Ave. Suite 1800
    Austin, TX 78701
    (512) 472-5997
    (512) 472-5248 [fax]

ATTORNEYS FOR DEBTORS AND DEBTORS-IN-POSSESSION

## **CERTIFICATION PURSUANT TO UNIFORM RULES, EXHIBIT H, SECTION I.G**

I hereby certify that I have (1) read this Application; (2) to the best of my knowledge, information and belief, the compensation and expense reimbursement sought is in conformity with the Guidelines for Compensation and Expense Reimbursement for Professionals, except as may be specifically noted in the Application; and (3) the compensation and expense reimbursement requested are billed at rates, in accordance with practices, no less favorable than those customarily employed by the Applicant and generally accepted by the Applicant's clients.

By: */s/ Mark C. Taylor*
    Mark C. Taylor

## CERTIFICATE OF SERVICE

   I hereby certify that the above and foregoing Application has been served by the Court's ECF e-filing notification on all parties receiving such notices on February 5, 2015. The Fee Application Summary, attached hereto as **Exhibit A**, has been served on all parties on the service list attached thereto as specified in its Certificate of Service.

                */s/ Mark C. Taylor*
                Mark C. Taylor